For the errors mentioned, the judgment will be reversed, and the cause remanded.

---

## LEE v. STATE. (No. 7760.)

(Court of Criminal Appeals of Texas. May 30, 1923.)

Appeal from Criminal District Court, Dallas County; Robert B. Seay, Judge.

Manzie Lee was convicted of burglary, and he appeals. Affirmed.

R. G. Storey, Asst. Atty. Gen., for the State.

LATTIMORE, J. Appellant was convicted in the criminal district court of Dallas county of burglary, and his punishment fixed at two years in the penitentiary.

Neither bills of exception nor statement of facts appear in the record. The indictment charges burglary in the regular form, and the charge of the court correctly submits the law of that issue.

No error appearing in the record, an affirmance will be ordered.

---

## STATE, for Use of DELTA COUNTY LEVEE IMPROVEMENT DIST. NO. I, et al., v. BANK OF MINERAL WELLS et al. (No. 9008.)

(Court of Civil Appeals of Texas. Dallas. April 21, 1923. Rehearing Denied June 2, 1923.)

**I. Levees and flood control ⬅══22—Tax levied under Canales Act becomes lien on property assessed.**

While the Canales Act (Acts 35th Leg. [4th Called Sess.] 1918, c. 25 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276]),

making Const. art. 16, § 59, effective by providing for the creation of conservation districts by bond issue and levying of taxes, does not expressly state that a lien shall exist for taxes levied and assessed under it, yet the express provision brought into it to the effect that all such districts may avail themselves of the benefits of Const. art. 16, § 59, which article and section expressly provide that all such indebtedness shall be a lien upon property assessed, brings into active operation that particular constitutional lien.

**2. Statutes ⬅══181(1)—To give effect to legislative intention is end to be attained in statutory construction.**

To give effect to legislative intention is the end to be attained in statutory construction.

**3. Levees and flood control ⬅══22—Tax lien to execute governmental rights and duties necessarily takes priority over contract lien.**

A tax lien to carry into execution governmental rights and duties, such as the construction and maintenance of levee improvement districts are declared to be by constitutional provisions (Const. art. 16, § 59, and article 3, § 52), necessarily takes priority over contract liens.

**4. Levees and flood control ⬅══22—Courts look to entire language of statute in determining priority of liens of assessments.**

Courts, in considering a lien for purely local assessments, do not determine the question of priority between them and private liens altogether with reference to whether or not priority is expressly authorized but rather look to the entire language of the enactment for the purpose to be accomplished.

**5. Levees and flood control ⬅══22—Constitutional provision and statute held notice to one asserting vendor's lien as against levee tax lien.**

Const. art. 3, § 52, providing for the creation of levee improvement districts, for a sale of bonds for the levy and assessment of taxes to pay interest and provide a sinking fund, etc., and Acts 31st Leg. (1909) c. 85, declaring that such tax shall be a lien upon the property against which it is levied, such constitutional provisions and statute *held* to have carried notice to one asserting the superiority of his antedating vendor's lien as against the lien of a tax subsequently assessed and levied, under authority of statute quoted, of state's assertion of its right and purpose to impose a superior lien.

**6. Constitutional law ⬅══190 — Constitution and statute making levee district tax superior lien impaired no pre-existing rights.**

Const. art. 3, § 52, providing for creation of levee improvement districts, for the payment of bonds, and for the levy and assessment of taxes to pay interest and providing a sinking fund, and Acts 31st Leg. (1909) c. 85, declaring that such tax shall be a lien upon the property against which it is levied, do not impair pre-existing rights, because those rights from the first were subordinate to the sovereign right to impose taxes for governmental purposes.

---

⬅══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Levees and flood control ⊚⇒2—Statute making effective constitutional provision for creation of levee district is constitutional.**

Canales Act (Acts 35th Leg. [4th Called Sess.] 1918, c. 25 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276]), making Const. art. 16, § 59, effective by providing for the creation of conservation districts by bond issues and levying of taxes, is constitutional.

**8. Levees and flood control ⊚⇒5 — Unlawful creation of levee district may be assailed only by state.**

The issue of the unlawful creation of a body politic, such as a levee district organized under Const. .art. 16, § 59, as amended in 1917, and Canales Act (Acts 35th Leg. [4th Called Sess.] 1918, c. 25 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276]), and Acts 34th Leg. 1915, c. 146 (Vernon's Ann. Civ. St. Supp. 1918, art. 5530 et seq.), as enacted under the authority of Const. art. 3, § 52, can be assailed only by the state itself, and the issue cannot be raised by a party to a suit involving bonds of the district.

**9. Levees and flood control ⊚⇒34—Statutory method of contesting elections applies to bond election in creation of levee district.**

The exclusive method of contesting elections as provided in Vernon's Sayles' Ann. Civ. St. 1914, arts. 3046 to 3078h, applies to elec-tions had under Canales Act (Acts 35th Leg. [4th Called Sess.] 1918, c. 25 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276]), relative to issuance and sale of bonds and the organization of a levee district, with the same force with which it applies to other contests of election, so that charges of fraud and irregularity in such election may not be asserted collaterally in a suit to enforce a tax lien given by Const. art. 3, § 52 and Vernon's Sayles' Ann. Civ. St. 1914, arts. 5530 to 5584, to a levee district to secure the collection of taxes.

**10. Levees and flood control ⊚⇒34—Holders of levee district bonds could not be affected by judgment declaring organization of levee district void without making bondholders parties to such suit.**

Holder of bonds issued pursuant to an election lawfully had under Canales Act (Acts 35th Leg. [4th Called Sess.] 1918, c. 25 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276]), to determine whether a levee district should be formed, would be necessary parties in a suit attacking the validity of the proceedings leading up to the organization of the district, and no judgment could be rendered therein which did not validly dispose of their rights.

**11. Levees and flood control ⊚⇒22—Tax assessed and levied by levee district held superior to antedating vendor's lien on property against which tax assessed.**

An annual ad valorem tax assessed and levied by a levee district created under Const. art. 16, § 59, as amended in 1917, and Canales Act (Acts 35th Leg. [4th Called Sess.] 1918, c. 25 [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276]), and Acts 34th Leg. (1915) c. 146 (Vernon's Ann. Civ. St. Supp. 1918, art. 5530 et seq.), which latter act was enacted under authority of Const. art. 3, § 52, to pay the principal and interest of bonds lawfully issued by the levee district for the construction of levees therein, *held* a lien under Vernon's Sayles' Ann. Civ. St. 1914, arts. 5530 to 5584, upon land located within the district prior and superior to a vendor's lien upon such property, though such vendor's lien came first in existence, where the constitutional provision and statute creating such tax lien were in existence at the inception of the vendor's lien; the operation, application, and effect of such tax not being the same as a general tax.

Appeal from District Court, Delta County; Newman Phillip, Judge.

Tax suit by the State of Texas for the use and benefit of Delta County Levee Improvement District No. 1 and others against the Bank of Mineral Wells and others. From the judgment rendered, plaintiffs appeal. Reversed and rendered in part and, as so modified, affirmed.

L. L. James and C. C. McKinney, both of Cooper, W. P. Dumas, of Dallas, Goree, Odell & Allen, of Fort Worth, Dial, Melson, Davidson & Brim, of Sulphur Springs, and Charles Claflin Allen, of St. Louis, Mo., for appellants.

Penix, Miller & Perkins, of Mineral Wells, and Long & Wortham, H. D. McDonald, and A. P. Park, all of Paris, for appellees.

HAMILTON, J. Appellant Delta County Levee Improvement District No. 1 was organized in 1918 under the authority of article 16, § 59, of the Constitution of Texas, as it was amended in 1917, and in conformity with the provisions of chapter 25 of the Acts of the 4th Called Sess. of the 35th Legislature (Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276), currently known as .the "Canales Act," and also in conformity with the provisions of chapter 146 of the acts of the 34th Legislature enacted in 1915 (Vernon's Ann. Civ. St. Supp. 1918, art. 5530 et seq.), which latter act was enacted under the authority of article 3, § 52, of the Constitution. Article 16, § 59, of the Constitution, is an amendment adopted in 1917 for the specific purpose of authorizing the Legislature to make provision for improvement districts in conformity with the grant of power it contains.

The steps provided by law to be taken in the creation of levee districts were pursued in bringing into existence Delta County Levee Improvement District No. 1. The district having been created in conformity with the foregoing statutory provisions enacted under the authority of the above-mentioned terms of the Constitution, bonds were issued for the construction of levees in the district. The bonds were sold and, as provided by law, taxes were levied and assessed against all the property located in the district for the

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

payment of the interest, and for the creation of a sinking fund against the bonds.

The Delta Farms Association, one of the appellees, owns approximately 2,400 acres of land in the district against which the assessment of taxes for the above-mentioned years was made to meet the interest and provide the sinking fund required by the terms of the bond issue.

Appellee Bank of Mineral Wells owned certain notes executed in 1912 and others executed in 1916 in part payment of the purchase price of the land, and to secure the payment of these notes a vendor's lien in each instance bearing coeval date with the notes exists.

The taxes levied and assessed, as above stated, were not paid and became delinquent. Suit was instituted in accordance with the provisions of the general tax laws against Delta Farms Association as the record owner of the land for the recovery of the taxes with penalties and interest, and for the foreclosure of the tax lien, and the Bank of Mineral Wells was made a party to the suit because it held the above-mentioned respective vendor's liens against the land to secure the purchase-money notes. The suit was not contested by the Delta Farms Association.

The Bank of Mineral Wells, alone, resisted the suit upon the claim that, as a matter of law and fact, the vendor's lien is superior to any lien to be asserted by virtue of the tax claimed in behalf of the bonds, and, among other numerous contentions presented in opposition to the claim asserted by appellant, relied primarily upon these specific ones: (1) That the levee district was never lawfully organized but was brought about and established altogether through fraud; (2) that the bonds were not lawfully created and do not constitute a legal charge against any property in the district; (3) that the taxes sought to be recovered were not legally levied and assessed; (4) that the amount represented by the bonds is far in excess of that allowed by the Constitution; (5) that the legislative enactment under which the attempt was made to organize the district is unconstitutional.

The trial court sustained various special exceptions to appellee's answer, interposing defenses of the nature of those above designated, and others, and thereby eliminated from the case all questions and issues except the question of whether or not taxes in the respective amounts claimed were due under the general tax law relating to delinquent taxes, and the question of whether or not the lien for the taxes provided under the levee district law was superior to the vendor's lien retained to secure the notes held by the appellee bank.

Having reduced the case to the confines of these issues, judgment upon them was entered against the Delta Farms Association for the amount of the taxes, interest, and penalties sued for, and for foreclosure of the tax lien, and the tax lien was decreed to be subordinate and inferior to the vendor's lien existing to secure the notes held by the appellee bank.

The various propositions of law advanced by appellant in the aggregate finally resolve themselves into the controlling question succinctly stated in appellant's brief, as follows: Is an annual ad valorem tax, assessed and levied by a levee district created under the Constitution and laws of the state of Texas for the purpose of paying the principal and interest of bonds lawfully issued by the district for the construction of levees therein, a charge upon land located within the district prior and superior to a vendor's lien or mortgagee's lien upon such property?

The disposition of this question necessarily involves the disposition of the propositions submitted by appellant and of the counter propositions submitted by appellee in antagonism to them.

Under cross-assignments of error numerous original propositions urged by appellee may be epitomized to the effect that the court erroneously excluded from consideration valid and proper defenses in sustaining special exceptions to various allegations of fraud pertaining to the organization of the district, including all the acts in connection with the election held to determine whether or not it should be formed, and all the acts done with reference to the issuance of the bonds, fraudulent conspiracy having been alleged both in the organization of the district and in the election for the issuance of the bonds; that at the time the bonds were issued the law provided that such bonds could not exceed in amount one-fourth of the valuation of the land in the district, while in fact the amount of the bonds transcended this limit; that they were not issued in conformity with the terms of the petition for the election and with the terms of the notices of the election, for which reason they were void; and that the court erred in sustaining exceptions to allegations to this effect; that the court erred in excluding a valid defense by sustaining exceptions to allegations of irregularities in the levy of the taxes, and of failure of the board of equalization to give lawful notice to owners and thereby providing them with an opportunity to be heard upon the levy and assessment of taxes and as to the valuation made the basis of the assessment and levy, as well as sustaining exceptions to allegations of the irregularities of levies and assessments for each of the years for which collection of the taxes is sought; and that the statute is void and unconstitutional because it expresses more than one subject in its title; because it fails to provide a means for equalizing taxes in the district or of assessing and levying them on the basis of benefits to accrue there-

from to the respective tracts of land taxed; that it provides only an arbitrary levy and assessment without giving notice to owners of land or affording any opportunity for them to be heard with reference to the question of benefits to flow from the levy and assessment; and that the method of assessment and levy of taxes provided by the act is arbitrary and in violation of both state and federal Constitutions, because it is a method which, in effect, provides for the taking of property without due compensation and without due process of law.

Reference to, and consideration of, different constitutional amendments expressing the fundamental law related to the question and application of the statutory provisions enacted pursuant to them will be made in determining the question of priority of liens above stated. Section 52 of article 3 of the Constitution adopted in 1904 contains an inhibition against the Legislature's authorizing political subdivisions of the state to lend their credit, but specifically makes the exception that such subdivisions or any defined district within the state, upon a vote of two-thirds majority of the resident property taxpayers who are qualified electors of such district to be affected thereby, may issue bonds, etc., in an amount not to exceed one-fourth of the assessed valuation of the real property contained in the district or territory. This constitutional provision provides for the levy and collection of taxes to pay the interest and create a sinking fund for the redemption of bonds thus issued under legislative authority for certain purposes, among which purposes is specified the improvement of rivers, creeks, and streams to prevent overflow.

Section 59 of article 16 of the Constitution, which was adopted in 1917, and which has been denominated the "Conservation Amendment" to the Constitution makes detailed provision for the conservation and development of the natural resources of the state with reference to the control, storing, preservation, and distribution of storm and flood waters of streams for irrigation, and power, and other purposes denominated as "useful purposes," and for various other specifically named purposes, among which is the reclamation and drainage of overflowed lands and other lands needing drainage. All of these things designated as the conservation and development of the natural resources of the state are declared to be public rights and duties, and the mandate is laid upon the Legislature to "pass all such laws as may be appropriate thereto." This provision of the Constitution specifies that there may be created in the state, or that the state may be divided into, conservation and reclamation districts for the accomplishment of the purposes of the amendment, and that such districts "shall be governmental agencies and bodies politic incorporated with such powers of

government, and with the authority to exercise such rights, privileges, and functions concerning the subject-matter of this amendment as may be conferred by law."

The amendment further declares that the Legislature shall authorize all such indebtedness as may be necessary to provide all improvements and the maintenance thereof requisite to the achievement of the purposes of the amendment, and declares:

"All such indebtedness may be evidenced by bonds of such conservation and reclamation districts to be issued under such regulations as may be prescribed by law, and shall also authorize the levy and collection within such districts of all such taxes equitably distributed as may be necessary for the payment of the interest and the creation of a sinking fund for the payment of such bonds, and also for the maintenance of such districts and improvements, and such indebtedness shall be a lien upon the property assessed for the payment thereof."

The Legislature is inhibited from authorizing the issuance of bonds or providing for any indebtedness against any such reclamation district unless the proposition to vote the bonds and create the indebtedness is first submitted to the qualified property taxpayers and voters of the district and the proposition thus submitted adopted by them.

In 1909 the Legislature enacted a comprehensive statute pursuant to the constitutional authority contained in section 52 of article 3, providing for the creation of levee improvement districts, for the sale of bonds, and for the levy and assessment of taxes to pay the interest and provide a sinking fund. It is expressly provided in this enactment that the taxes authorized to be levied shall mature and become delinquent as is provided by law for state and county taxes; that delinquent taxes shall be collected in the same manner as is provided for the collection of general state and county taxes which become deliquent, and it is specifically declared that such taxes shall be a lien upon the property against which they are levied and assessed. Chapter 2 of title 83, arts. 5530 to 5584, inclusive, V. S. T. C. S. 1914.

The act of 1909, above cited, was amended in 1915 in certain substantial respects relating to procedure in the creation and construction of levee districts, but no material departure from the method provided for by the issuance of bonds and the assessment and levy of taxes was made in this act, and it retained the express provision that the taxes authorized by it should be payable and should mature and become delinquent in the same manner as is provided by law for state and county taxes. The particular provision making the tax a lien upon the property against which it was to be assessed was retained in the language in which it was embodied in the Act of 1909, c. 2, tit. 83, arts. 5530 to 5584–d, inclusive, V. S. T. C. S. 1918 Supp.

Pursuant to the above-mentioned section 59 of article 16 of the Constitution, embodied in the amendment of 1917, which, as is to be noted, not only greatly expanded the legislative power to enact laws for the establishment and construction of conservation and development districts, but further declared such conservation and development to be public rights and public duties, and laid upon the Legislature express direction to pass laws appropriate thereto, the Legislature in 1918 enacted what is designated as the "Canales Act," and thereafter, under the provisions of this act, and under the authority of the constitutional amendment of 1917, upon which it is rested, steps were instituted in August, 1918, and carried to consummation which finally resulted in the issuance and sale of the bonds for the payment on the interest of which, and for the redemption of which, the taxes involved in this litigation were imposed. Chapter 25, Gen. Laws, 35th Leg. (Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—267 to 5107—276, inclusive). This act provides that conservation and reclamation districts may be organized in any manner in which water improvement districts, drainage districts, or levee improvement districts were authorized under existing laws at the time it was enacted, and for all the purposes provided in such laws. The act also provides that such improvement districts as that here under consideration might avail themselves of all the benefits of section 59 of article 16 of the Constitution above noted. It provides that such districts might incur indebtedness and levy taxes to fully carry out all of the purposes of the organization and to pay its obligations and maintain and operate it. It removed all limitations of indebtedness to be incurred and, all limitations of taxes to be levied as provided for in section 52 of article 3 of the Constitution, limiting the amount to one-fourth of the assessed valuation of the land contained in the districts. It prescribes ascertainment of these limitations to be made by the means it supplies.

[1] The law left unimpaired existing statutes relating to the subject, including statutory provisions for liens for the payment of taxes levied and assessed, and gave active application and operation to the constitutional amendment embodied in section 59 of article 16 of the Constitution, adopted as above noted in 1917; and, while the act itself does not expressly state that a lien shall exist for taxes levied and assessed under it, yet the express provision inwrought into it, to the effect that all such districts may avail themselves of the benefits of section 59 of article 16 of the Constitution, which does expressly provide that all such indebtedness as may be incurred by the levy and collection of taxes in such districts shall be a lien upon the property assessed, brings into active operation that particular constitutional lien.

Appellee elaborately and cogently argues that an existing contract lien cannot be displaced, or rendered subordinate to a subsequently conferred statutory lien, except that the law which creates the latter lien expressly declares, or by unavoidable inference from all of its language reveals, the legislative purpose explicitly to have been to render such statutory lien a superior one. Numerous authorities from the courts of this state are cited in support of this position, but an examination of each of them reveals that in every instance in which our courts have made a declaration upon this question the point under consideration was one which, in our opinion, is to be distinguished from that here involved. In those cases the question of priority did not involve a tax levied under a general law for a governmental purpose on the one hand and a private contract lien upon the other. In each case cited in which priority of lien was determined as between a statutory lien and a contract lien, the statutory lien was provided in behalf of, and for the benefit of, a private individual. The provisions of the Constitution and the statutory enactments which authorize the levy of the taxes, and which authorize the lien to secure them, give expression to sovereign powers of government to be exercised, not solely and exclusively for the benefit of private citizens, but also in pursuit of the general policy of the state for the public good, clearly expressed in the constitutional mandates and the statutory enactments which apply to and govern the issuance of the bonds, and the levy and assessment of the taxes to secure the payment of the interest upon them as it accrues, as well as to secure their redemption at maturity. While the tax operates locally, and the lien is given for improvements which are local in their nature, yet the fact remains that the tax is a governmental tribute, specially imposed through a special process for the accomplishment primarily of a governmental purpose explicitly declared in the constitutional amendment embodied in section 59 of article 16, upon which the questions of right and authority in controversy ultimately rest. The tax, although in the form of an ordinary ad valorem tax, partakes of the effect of a special assessment. Both the statutory and constitutional provisions for the creation of the district, the issuance of the bonds, and the levy and assessment of the tax clearly indicate so much. Notwithstanding this, we think it clear that the lien is given not merely in return for the special benefits to accrue to the property, but also for the general good. It is a governmental assessment through the processes and machinery provided by the statutes brought about within and under the general governmental realm, and, in the nature of things, the purposes expressed both in the Constitution and in the statutes would be rendered impracticable, if not

impossible of accomplishment, if the lien for the taxes is to be held of force inferior to, and of dignity beneath, what is attributed to the lien provided for general state and county taxes.

[2] To give effect to the legislative intention is the end to be attained in statutory construction. A legislative intention to render the tax subject to such precarious exigencies as contended for is not to be imputed in construing the statute, in view of the manifest purpose expressed in the Constitution and clearly entertained by the Legislature in enacting the law.

[3] A tax lien for the purpose of carrying into execution governmental rights and duties, such as the construction and maintenance of levy improvement districts are declared to be by the constitutional provisions applicable here, necessarily takes priority over contract liens. The lien exists to secure the accomplishment of a governmental demand, expressed both by the fundamental law, and by legislative enactment to give expression to the police power of the state, and to secure the performance of a governmental function which could not be accomplished if the bonds from the proceeds of which the improvements are to be made are offered for sale upon the condition that the lien given to secure the taxes to discharge the obligation they impose must be deferred and rendered inferior to liens in behalf of citizens resting purely upon private contractual relations. The terms of the constitutional amendment contained in section 59 of article 16 put beyond question the proposition that, although the tax may be regarded as in the nature of a local assessment for the general public welfare, it is nevertheless dependent upon the indebtedness being rested upon the highest security. The constitutional and statutory mandates which sustain the tax and fix the lien render certain the pursuit of a governmental purpose transcending the mere property interests of the levee district. They comprehend as well the general welfare of the state. They aim at the special development of the state's resources, composed of privately owned land against which the tax is levied and upon the improvement of which it is spent. Their express purposes fall within the general police power of the state. Drainage District v. Higbee (Tex. Civ. App.) 149 S. W. 385. The tax, therefore, is not to be viewed merely from the standpoint of the benefits to property in the district. If, however, it were so viewed, it would still remain a tax as distinguished from a local assessment. Jones & Page, Taxation by Assessment. § 36, and authorities cited thereunder. The element of sovereignty cannot be excluded from a consideration of the priority of the liens, and "every sovereignty ought to be armed with the requisite power to enforce the collection of taxes without fail, and to compel the prompt payment of whatever imposts it sees fit to levy for its own support."

The practical effect of declaring the tax lien inferior to the vendor's lien held by the bank would be to render ineffectual in this instance the law and the constitutional amendment it was enacted to bring into active effect. This, we think, is so manifest that it is demonstrated in the mere statement. No bonds could have been sold for the construction and operation of projects intended to be accomplished if the security for the taxes levied to redeem them were to be characterized by such frailties. Certainly the Legislature did not intend to hamper the giving of practical effect to the constitutional requirement embedded in the amendment. The policy of the government expressly declared, both in the Constitution and in the statute, in practical effect would be defeated by deferring the taxes, and the lien given in the Constitution for them, to a right and interest in land expressed in a reservation of title to secure purchase money. The demand expressed by the tax and the lien, being a governmental act of sovereignty for the accomplishment of a public purpose written into both the Constitution and the statute, must be given precedence over such purely private rights and interests as are here asserted, although there is no express declaration that priority should be accorded. Storie v. Street Ry. Co., 92 Tex. 129, 46 S. W. 796, 44 L. R. A. 716; Richmond v. Williams, 102 Va. 733, 47 S. E. 844; Dressman v. Bank, 100 Ky. 571, 38 S. W. 1052, 36 L. R. A. 121; State v. Central Trust Co., 94 Fed. 247, 36 C. C. A. 214; O'Dea v. Mitchell, 144 Cal. 374, 77 Pac. 1020; Wharton Co. v. Drainage Dist. (Tex. Civ. App.) 149 S. W. 387.

[4] We do not understand that courts, in considering liens for purely local assessments, determine the question of priority between them and private liens altogether with reference to whether or not priority is expressly authorized, but rather look to the entire language of the enactment, and the purpose to be accomplished.

Having regard to the constitutional declaration that the accomplishment of the objects provided for amounts to the discharge of public rights and public duties, we think that the public policy thus reflected, taken in connection with the levy and assessment of an annual tax as provided for, put the indebtedness here involved in the category of ordinary taxes, as distinguished from that character of taxes denominated as an "assessment," and usually levied in a fixed amount at the time of its imposition. This tax is of the same nature as a general tax, although its operation, application, and effect are not the same. The original constitutional provision for a tax lien does not expressly declare such lien a prior one. It is only designated as a "special lien." Constitution, art. 8, § 15. The statute relating to general

tax liens does not declare that they shall be prior liens, but merely declares the existence of a lien for delinquent taxes. Article 7684, V. S. T. C. S. 1914.

[5] The fact that the mortgage lien antedated the creation of the levee district, we think, can have no bearing on the question of priority. In the nature of things, it seems to us that private contractual rights must always be subordinated to the superior sovereign right of taxation for any public purpose in the government which protects and enforces such private rights. The fundamental interests of society, which always transcend purely private interests of an individual, require as much. State v. Central Trust Co., supra. As above noted, section 52, art. 3, of the Constitution, was in existence at the time the vendor's lien was created, as was also the legislative act passed in conformity therewith in 1909. These provisions carried notice and warning to appellee of the state's assertion of its right and purpose to impose this very character of tax at any time these provisions might be invoked in a given locality, such as that where this levee district was created.

[6] Appellee exhaustively argues that the provisions of the Constitution and statute authorizing this particular tax cannot be given precedence over the vendor's lien existing to secure its indebtedness, because to give them such effect would be in conflict with the constitutional provision against the enactment of retroactive laws. This position, we think, is untenable. The effect of holding the tax lien prior to the contract lien is not to make it retroactive. It does not affect, in a retroactive sense, what has already passed; it merely puts in action, prospectively, the potential and inherent power of the government promptly and efficiently to enforce its obligations lawfully imposed, and subordinates to this power every private interest in the land, including that retained in the vendor's lien. It impairs no rights pre-existing, because those rights from the first were subordinate to the supreme right of the sovereignty to impose taxes for governmental purposes.

[7] So far as the pleadings disclose, all the various intricate provisions of the law indicating the steps to be followed in creating the district, issuing the bonds, and levying and assessing the tax, were complied with. There is no sufficient allegation of any fraudulent conduct upon the part of the commissioners court or the reclamation engineer, or by any other authorized agency in the discharge of the duties which the statute imposes in the creation of such districts and the issuance of bonds, to constitute a charge of fraudulent conduct against any of such functionaries. The law itself has been passed upon and held constitutional and valid by our Supreme Court. Dallas County Levee District No. 2 v. Looney, Attorney General, 109 Tex. 326, 207 S. W. 310.

[8] The district is a governmental body. It operates as such and exercises governmental powers and functions. This being true, we think it clear that appellee bank cannot, in a suit of this character, defend against the enforcement of the priority of the tax lien on such grounds of irregularity and fraud in its inception and organization as those which are alleged. The issue of the unlawful creation of a body politic, such as the levee district, can be assailed only by quo warranto proceedings instituted by the state itself. El Paso v. Ruckman, 92 Tex. 89, 46 S. W. 25; Holt v. State (Tex. Civ. App.) 176 S. W. 743; Coffman v. School Dist. (Tex. Civ. App.) 141 S. W. 132; State v. Bradshaw (Tex. Civ. App.) 228 S. W. 655; Crabb v. Celeste School Dist., 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601.

[9] The charges of fraud and irregularity in the election in which the bonds were voted and the taxes levied cannot be heard in this proceeding for the additional reason that an exclusive method for the contest of such elections is provided by statute. Vernon's Sayles' Ann. Civ. St. 1914, arts. 3046 to 3078h. This exclusive method of contesting elections applies to elections of this nature with the same force with which it applies to other contests of elections. The remedy provided must be invoked within the terms of the law, and the right of contest so provided cannot be asserted collaterally in a suit of this nature. Coffman v. School Dist., supra; Parker v. Harris Co. Drainage Dist., 148 S. W. 351 (writ of error denied by Supreme Court).

[10] It appears that the bonds which were issued pursuant to the election held for that purpose were sold after examination and approval by the attorney general of Texas, and that they are now in the hands of purchasers who are not parties to this litigation. The holders of the bonds, it seems, were impleaded, but were never cited and brought into court. They were not before the court so as to be affected by any judgment. In any event, such holders of the bonds would be necessary parties to a proceeding of this character and no judgment could be rendered which did not validly dispose of their rights. Dallas County Levee Imp. Dist. No. 3 v. Ayers (Tex. Civ. App.) 246 S. W. 1112 (writ of error refused).

The proposition that the act is unconstitutional, as providing for the taking of property without due compensation and without due process of law is untenable. This question has been definitely disposed of heretofore by this court in the case of Dallas County Levee Improvement District No. 3 v. Ayers, supra. It is therefore unnecessary to devote to it any further discussion.

We are of the opinion that each of the

propositions not specifically discussed in this opinion is of insufficient force as applied to this case to require a reversal of the judgment and they are expressly overruled.

[11] Holding the views above expressed, we are of the opinion that the judgment of the court below decreeing appellee bank's lien to be superior to the tax lien asserted by appellant was erroneous, and we accordingly reverse that judgment, and here render judgment decreeing the tax lien to be prior to appellee's vendor's lien. The judgment in other respects is affirmed.