**CYPRESS–FAIRBANKS INDEPENDENT SCHOOL DISTRICT, Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, North Harris Montgomery Community College District, Harris County Hospital District, and Emergency Service District No. 9, Appellants,**

v.

**GLENN W. LOGGINS, INC., Trustee and TRAAC Company, Ltd., Appellees.**

No. 04–02–00513–CV.

Court of Appeals of Texas, San Antonio.

July 2, 2003.

---

F. Duane Force, Linebarger Goggan Blair & Sampson, L.L.P., Austin, for Appellant.

John C. Wray, Pitts & Way, Waxahachie, Mickey R. Davis, Davis, Ridout, Jones & Gerstner, L.L.P., Houston, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SARAH B. DUNCAN, Justice (concurring in the judgment only), KAREN ANGELINI, Justice.

## ON APPELLANT'S MOTION FOR REHEARING

Opinion by KAREN ANGELINI, Justice.

Because our judgment of April 23, 2003 erroneously taxed costs of appeal against appellants, we grant appellants' motion for rehearing. This court's opinion and judgment dated April 23, 2003 are withdrawn, and this opinion and judgment are substituted in their place.

In this appeal, we are presented with an issue of first impression: whether a possibility of reverter interest can be extinguished in a tax foreclosure sale. We hold that it cannot.

### BACKGROUND

In 1986, Glenn W. Loggins, Inc., Trustee ("Loggins") bought 6.1869 acres of land. According to the deed, the land was "to be used for the purpose of constructing a flood control facility on Bear Creek and thereafter to be used solely for flood control purposes." The habendum clause provided that the grantee was to hold the property "for so long as the Property is used for the purpose of constructing a flood control facility or used for flood control purposes." Another clause contains a possibility of reverter:

> If and when the Property is ever used for the purposes other than flood control or is abandoned by Grantee, his successors and assigns, this conveyance shall

be null and void, and title to the Property shall absolutely revert to Grantor, his successors and assigns without the necessity of re-entry or suit; and no act or omission on the part of any beneficiary of this clause shall be a waiver of the operation and enforcement of such condition.

Appellee TRAAC Co., Ltd. ("TRAAC") is the assignee of this possibility of reverter interest originally retained by Loggins' grantor.

Because Loggins failed to pay its taxes, Appellants Cypress–Fairbanks Independent School District, Harris County, Harris County Education Department, Port of Houston of Harris County Authority, Harris County Flood Control District, North Harris Montgomery Community College District, Harris County Hospital District, and Emergency Service District No. 9 filed suit for recovery of delinquent ad valorem taxes. Appellants sought a personal judgment against Loggins and foreclosure of the property. Because of TRAAC's possibility of reverter interest in the property, appellants also brought suit against TRAAC. TRAAC filed an answer, arguing that merely owning a non-taxable interest did not make it a proper party to the suit. It further argued that its non-taxable interest could not be foreclosed and extinguished by appellants' tax suit. According to TRAAC, any purchaser at a tax foreclosure sale would take the tax title subject to its possibility of reverter interest. And, maintaining that appellants' claims against it were groundless and without any merit, TRAAC brought a counterclaim against appellants for attorney's fees.

TRAAC moved for summary judgment on these grounds. After referral from the trial court, a tax master heard the motion. In his report to the referring court, the tax master recommended that a take-nothing

judgment be entered in favor of TRAAC, but that TRAAC not collect any attorney's fees on its counterclaim. To the extent that the tax master recommended that appellants take nothing against TRAAC, appellants appealed the tax master's report and recommendation to the trial court. After hearing the motion de novo, the trial court entered a partial summary judgment on March 8, 2002 in favor of TRAAC. It ordered that TRAAC owns no taxable interest in the property, that TRAAC's interest is not subject to appellants' tax liens, and that any purchaser at a tax foreclosure sale will take the property subject to TRAAC's possibility of reverter interest. With regard to TRAAC's claim for attorney's fees, the trial court deferred ruling, stating that the "parties shall submit later briefing on the issue of attorney's" fees.

Because Loggins never answered the lawsuit, appellants moved for default judgment. On May 22, 2002, the trial court entered final judgment, incorporating its previous partial summary judgment in favor of TRAAC. The trial court did not award TRAAC its attorney's fees. TRAAC moved for a new trial for the "limited purpose of considering TRAAC's request for attorney's fees and costs" pursuant to section 10.004(c)(3) of the Texas Civil Practice and Remedies Code. TRAAC's motion was overruled by operation of law.

### Possibility of Reverter

TRAAC filed a traditional motion for summary judgment. We review the grant of a summary judgment de novo. *Neel v. Killam Oil Co.*, 88 S.W.3d 334, 339 (Tex. App.-San Antonio 2002, pet. denied); *Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 602 (Tex.App.-San Antonio 1995, writ denied). Summary judgment is proper when the summary judgment record establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law on a ground set forth in the motion. *Neel*, 88 S.W.3d at 339; *see* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). We view the evidence in the light most favorable to the nonmoving party and all contrary evidence and inferences must be disregarded. *Nixon*, 690 S.W.2d at 548; *Neel*, 88 S.W.3d at 339.

■ Here, we are presented with an issue of first impression: whether a possibility of reverter interest is a taxable interest that is subject to tax liens. The tax master concluded that a possibility of reverter interest is a nontaxable interest that could not be extinguished through the appellants' foreclosure action. Although appellants concede that TRAAC has no personal liability for the delinquent taxes and thus, that TRAAC owns a nontaxable interest, appellants nevertheless argue that their tax liens are superior to TRAAC's interest and as such, TRAAC's interest may be foreclosed upon at a tax sale.

■ "The 'possibility of reverter' is the real property term of art for what the grantor owns as a future interest in a determinable fee grant; it is the grantor's right to fee ownership in the real property reverting to him if the condition terminating the determinable fee occurs." *Luckel v. White*, 819 S.W.2d 459, 464 (Tex.1991) (citation omitted). A possibility of reverter interest may be separately alienated and conveyed freely without affecting the underlying fee simple determinable property interest. *See Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex.1991). While a possibility of reverter interest can be freely conveyed, it only becomes a present possessory interest upon the termination of the condition in question. *See id.* Relying on the contingent nature of this prop-

erty interest, the supreme court noted in *Texas Turnpike Co. v. Dallas County*, 153 Tex. 474, 271 S.W.2d 400, 402 (1954), that "a contingent remainder in property is not a taxable title." And, "[n]either is a possibility of reverter." *Id.* Thus, according to the supreme court, a possibility of reverter interest is a nontaxable interest.

■ Despite a possibility of reverter being a non-taxable interest, appellants argue that they can foreclose upon such an interest. In support of their argument, appellants cite to several sections of the Tax Code. First, appellants point to section 33.54, which protects the purchaser of the property at a tax sale from previous *claims* against the property. TEX. TAX CODE ANN. § 33.54 (Vernon 2001). Subsection (a) provides that an *action relating to the title to property* may not be maintained against the purchaser of the property at a tax sale unless certain specific requirements are met. *Id.* § 33.54(a). Adding further protection, subsection (c) states that "[w]hen actions are barred by this section, the purchaser at the tax sale or the purchaser's successor in interest has full title to the property, precluding all other *claims*." *Id.* § 33.54(c) (emphasis added). Second, appellants cite to section 32.05, entitled "Priority of Tax Liens Over Other Property Interests," which provides that a tax lien "takes priority over the *claim* of any creditor of a person whose property is encumbered by the lien and over the *claim* of any holder of a lien on property encumbered by the tax lien, whether or not the debt or lien existed before attachment of the tax lien." *Id.* § 32.05(b) (emphasis added). Neither section 33.54 nor section 32.05, however, controls here. TRAAC's possibility of reverter interest is not a *claim;* it is an *interest* in the property distinct from Loggins's interest. And, TRAAC would not have to institute an *action relating to the title of*

*property* to invoke its possibility of reverter interest; if the property is ever used for any purpose other than flood control or is abandoned, the property will automatically revert back to TRAAC.

Relying on *Cooley on Taxation,* appellants also argue that state legislatures have power to provide either (1) that the tax sale shall create a new title cutting off all prior liens, encumbrances, and interests, or (2) that the tax purchaser shall acquire the interest only of the person in whose name the land was assessed or of the real owner. Pointing to section 34.01(n) of the Tax Code, appellants claim that Texas has adopted the former course. Section 34.01(n) provides that a buyer purchasing the property at a tax sale receives a deed that vests good and perfect title:

> (n) The deed vests good and perfect title in the purchaser or the purchaser's assigns to *the interest owned by the defendant* in the property subject to the foreclosure, including the defendant's right to the use and possession of the property, subject only to the defendant's right of redemption, the terms of a recorded restrictive covenant running with the land that was recorded before January 1 of the year in which the tax lien on the property arose, a recorded lien that arose under that restrictive covenant that was not extinguished in the judgment foreclosing the tax lien, and each valid easement of record as of the date of the sale that was recorded before January 1 of the year the tax lien arose. The deed may be impeached only for fraud.

TEX. TAX CODE ANN. § 34.01(n) (Vernon 2001) (emphasis added). According to appellants, the phrase "the interest owned by the defendant" refers to both Loggins *and* TRAAC. We disagree. Loggins, the enti-

ty that failed to pay its taxes, was the rightful defendant in the tax sale. TRAAC, however, was not. Appellants concede that TRAAC owns a nontaxable interest. By owning a nontaxable interest, TRAAC cannot be delinquent in its tax obligation. Logically, then, it also cannot be a proper defendant to a tax foreclosure sale.

■ Lastly, appellants argue that Texas common law has long held that tax liens, even in the absence of express legislative provisions for tax lien priority, are afforded precedence over private rights and interests. For support, they cite *State v. Bank of Mineral Wells*, 251 S.W. 1107 (Tex.Civ.App.-Dallas 1923, writ ref'd). In *Bank of Mineral Wells*, the taxing authority initiated a foreclosure action against the owner of the property. *Id.* at 1109. The bank was joined as a party because it held a lien against the property. *Id.* The court held that a tax lien was superior to the bank's lien, despite any express statement by the Texas legislature:

> The demand expressed by the tax and the lien, being a governmental act of sovereignty for the accomplishment of a public purpose written into both the Constitution and the statute, must be given precedence over such purely private rights and interests as are here asserted, although there is no express declaration that priority should be accorded. . . . The fact that the mortgage lien antedated the creation of the levee district, we think, can have no bearing on the question of priority. In the nature of things, it seems to us that pri-

vate contractual rights must always be subordinated to the superior sovereign right of taxation for any public purpose in the government which protects and enforces such private rights. The fundamental interests of society, which always transcend purely private interests of an individual, require as much.

*Id.* at 1112–13. First, *Bank of Mineral Wells* is purely persuasive authority and we are under no obligation to follow it. Second, *Bank of Mineral Wells* is distinguishable from the facts here as its holding was limited to a lien, not a possibility of reverter.[1] Third, we refuse to follow *Bank of Mineral Wells's* broad dicta that private contractual rights must always be subordinated to the superior sovereign right of taxation. Since *Bank of Mineral Wells*, the legislature has clearly stated otherwise. *See* Tex. Tax Code Ann. § 32.05(c) (Vernon 2001) (providing that a tax lien is inferior to a claim under a recorded restrictive covenant running with the land, to a claim under a valid easement of record, or to a claim for survivor's allowance, funeral expenses, or expenses of the last illness of a decedent made against the estate of a decedent). Finally, *Bank of Mineral Wells* states that "private contractual rights must always be subordinated to the *superior right of taxation.*" *Bank of Mineral Wells*, 251 S.W. at 1112–13 (emphasis added). Here, appellants have conceded that TRAAC's possibility of reverter interest is nontaxable. As such, appellants have no "right of taxation."

For the foregoing reasons, we hold that TRAAC owns an interest in the property

---

1. Appellants argue that a possibility of reverter interest is a lien or encumbrance on the land. As such, appellants contend that we should apply *Bank of Mineral Wells's* holding here. For support, appellants cite *Newman v. Hasslocher*, 242 S.W.2d 822 (Tex.Civ.App.-San Antonio 1951, no writ), in which we held that a restricted use placed upon property constitutes an encumbrance on the property. We refuse to extend *Newman's* holding to possibility of reverter interests. A possibility of reverter interest is a separate and distinct interest from the determinable fee. It is not, however, an encumbrance on that determinable fee.

that is distinct from that of Loggins. Because TRAAC owns a distinct nontaxable interest, this interest cannot be extinguished by a foreclosure sale. Any purchaser of Loggins' interest in a foreclosure sale will take Loggins' title with knowledge of and subject to TRAAC's possibility of reverter. We overrule appellants' sole issue.

## MOTION FOR NEW TRIAL

■■■■ TRAAC brings a cross-issue, arguing that the trial court erred in failing to grant it a new trial with regard to its counterclaim for attorney's fees. We review a trial court's ruling on a motion for new trial under an abuse of discretion standard of review. *Chavarria v. Valley Transit Co.,* 75 S.W.3d 107, 110 (Tex.App.-San Antonio 2002, no pet.).

According to TRAAC, the trial court did not give it a reasonable opportunity to brief whether it was entitled to recover attorney's fees under chapter 10 of the Texas Civil Practices and Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. §§ 10.001-.006 (Vernon 2002). Section 10.001 permits a trial court to award attorney's fees to a party defending a frivolous lawsuit. *Id.* § 10.001. On January 10, 2002, the tax master recommended that attorney's fees not be granted in favor of TRAAC, emphasizing that the appellees had some cause to join TRAAC as a party. On March 8, 2002, the trial court entered a partial summary judgment, deferring the attorney's fees issue and ordering the parties to submit "later briefing" on the issue. On May 22, 2002, the trial court signed the final judgment, incorporating the prior partial summary judgment. The judgment does not grant TRAAC attorney's fees and expressly denies all other relief previously requested. On June 7, 2002, TRAAC filed a motion for new trial, arguing the following:

[Appellee's] causes of action against TRAAC are without merit. It has, however, been necessary for TRAAC to retain the undesigned [sic] law firm to defend its interests in this lawsuit, and TRAAC has been charged a reasonable and customary fee for the services rendered. TRAAC requests the Court to order a new trial *for the limited purpose of considering TRAAC's request for attorney's fees and costs pursuant to Tex. Civ. Prac. & Rem.Code § 10.004(c)(3).*

(emphasis added). These statements in TRAAC's motion for new trial do not preserve the issue of whether the trial court erred by not allowing sufficient briefing. TRAAC has, therefore, waived this issue on appeal. We overrule TRAAC's cross-issue.

## TAXING COSTS OF APPEAL

Normally in a civil case, we award costs of appeal to the prevailing party. *See* TEX.R.APP. P. 43.4. As such, our judgment of April 23, 2003 awarded costs of appeal to TRAAC. However, as pointed out by appellants on rehearing, appellants are exempt from costs, including any costs on appeal, pursuant to section 33.49(a) of the Texas Tax Code. *See* TEX. TAX CODE ANN. § 33.39(a) (Vernon 2001) ("Except as provided by subsection (b), a taxing unit is not liable in a suit to collect taxes for court costs ...."). We, therefore, withdraw our judgment of April 23, 2003 and issue a new judgment.

## CONCLUSION

Having overruled all issues, we affirm the judgment of the trial court.