COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CRAIG B. SINGER AND CAROL G. SINGER, | § | No. 08-11-00021-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 367th Judicial District Court |
| | § | of Denton County, Texas |
| STATE OF TEXAS, | § | |
| | § | (TC#2008-50158-367) |
| Appellee. | § | |

## O P I N I O N

Craig and Carol Singer (the Singers) filed an inverse condemnation claim against the State of Texas (the State). The Singers raise twelve issues on appeal challenging the trial court's summary judgment in favor of the State and assert that the trial court properly denied the State's plea to the jurisdiction. We affirm the trial court's judgment.

## BACKGROUND

On December 31, 1991, the Singers executed two donation deeds conveying 48.327 acres of land in Denton County to the State of Texas for public highway purposes. Each deed included the following provision:

> In the event the land herein described is not used for public highway purposes, which includes construction contract letting, on S.H. 121 (Lewisville Bypass) on or before January 1, 2000, then all or that portion of the land not so used, as the case may be, will revert to and be revested in the Grantor named herein or their successors in interest[s].

The SH 121 (Lewisville Bypass) project was to be constructed in two stages. In January 1996, a construction contract for Stage 1 was let. Stage 1 construction built frontage roads with enough space between them to accommodate the future main lanes, ramps to tie into the future

main lanes, and a temporary asphalt crossing to allow public travel to and from the frontage roads. The project also built an embankment to act as a flood control levee until the main lanes were constructed and which would then become part of the base of the main lanes. Additionally, Stage 1 consisted of work that accommodated the future main lanes including the excavation of dirt between the frontage roads, the installation of storm drain structures, and the re-vegetation of the area between the frontage roads to reduce erosion and preserve the work that was done in anticipation of the future main lanes. Stage 1 construction started in April 1996, and was completed by March 9, 2001. Two years after Stage 1 had been completed, the State let a construction contract for Stage 2 of the SH 121 (Lewisville Bypass) project. Stage 2 consisted of the construction and completion of the main lanes. Stage 2 construction began in early February 2004, and was completed in October 2006. On May 29, 2008, the Singers filed suit for inverse condemnation. The Singers alleged that because the State had not used portions of the land for public highway purposes and had not let a construction contract as defined in the deeds as of January 1, 2000, the unused portions of the deeded land reverted to them. Further, the Singers asserted that the State's continued dominion over and construction on the unused portions of land after January 1, 2000, constituted a taking for a public purpose which entitled them to adequate compensation under Section 17, Article 1 of the Texas Constitution. TEX. CONST. art. I, § 17.

Answering the lawsuit, the State filed a plea to the jurisdiction. The State subsequently filed an amended plea to the jurisdiction and also moved for summary judgment on no-evidence and traditional grounds. The trial court denied the State's plea to the jurisdiction, granted summary judgment in favor of the State, and ordered that the Singers take nothing against the State. The trial court granted the State's traditional summary judgment motion on its statute of

2

limitations defense. The trial court also granted the State's no-evidence summary judgment motion on the Singers' inverse condemnation claim without specifying the grounds for doing so. This appeal followed.

## DISCUSSION

*Standard of Review*

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Our review is limited to consideration of the evidence presented to the trial court. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App. – Houston [14th Dist.] 2007, no pet.). When a summary judgment fails to specify the grounds that the trial court relied upon for its ruling, we may affirm the judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 556 (Tex. App. – San Antonio 2011, no pet.).

A no-evidence motion for summary judgment is essentially a pretrial motion for directed verdict, and we apply the same legal sufficiency standard. *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 616 (Tex. App. – El Paso 2006, pet. denied). Accordingly, we review the evidence in the light most favorable to the non-movant and disregard any contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A movant for a no-evidence summary judgment must state which essential elements are without any evidentiary support. *Aguilar v. Morales*, 162 S.W.3d 825, 834 (Tex. App. – El Paso 2005, pet. denied). The non-movant must then produce evidence raising a genuine issue of material fact on each challenged element. TEX. R. CIV. P. 166a(i); *Aguilar*, 162 S.W.3d at 834. The

3

non-movant meets his burden when he produces more than a mere scintilla of evidence supporting each challenged element. *See Gray*, 225 S.W.3d at 616. More than a scintilla of evidence exists when the evidence would permit reasonable and fair-minded people to differ in their conclusions. *King Ranch*, 118 S.W.3d at 751. However, less than a scintilla of evidence exists when the evidence is so weak that it does no more than create a surmise or a suspicion of a fact. *Id.*

A party seeking a traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Diversicare Gen. Partner., Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). If the movant meets this burden, the burden then shifts to the non-movant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010).

*Inverse Condemnation*

The Texas Constitution prohibits the State from taking, damaging, or destroying an individual's property, for public use, without adequate compensation. *See* TEX. CONST. art. I, § 17. Inverse condemnation occurs when the government takes property for public use without proper condemnation proceedings, and the property owner attempts to recover some type of compensation for that taking. *Park v. City of San Antonio*, 230 S.W.3d 860, 867 (Tex. App. – El Paso 2007, pet. denied). To establish an inverse condemnation claim, the property owner must show: (1) an intentional governmental act; (2) that resulted in the taking, damaging, or destroying of the owner's property; (3) for public use. *Id.* Accordingly, to assert a valid Article I takings

4

claim, the claimant must first prove an ownership in the property taken. *See* TEX. CONST. art. I, § 17; *State v. Fiesta Mart, Inc.,* 233 S.W.3d 50, 54 (Tex. App. – Houston [14th Dist.] 2007, pet. denied).

*The No-Evidence Motion for Summary Judgment*

At the trial level, the State moved for a no-evidence summary judgment on the second element of the Singers' inverse condemnation claim and argued that the Singers produced no evidence that they owned the property in question, and thus could not establish a taking. In Issue One, the Singers contend that the trial court erred in granting the State's no-evidence summary judgment because the evidence showed that a portion of the property automatically reverted to them under the terms of the donation deeds. In the present case, it is undisputed that the parties' claims to the property at issue derive from the donation deeds. The Singers contend that the language in the deeds create a possibility of reverter. The State counters that the language of the deeds creates a condition subsequent which, having been satisfied, cannot have resulted in the automatic reversion and revestment of title in the Singers. Accordingly, we must begin by interpreting the conditions set forth in the deeds and determine whether they created either a condition subsequent or a possibility of reverter.[1]

In interpreting the language of deeds, we must ascertain the intent of the parties as set forth within the four corners of the document and attempt to harmonize all portions of the deeds.

---

[1] A condition subsequent is the language designating an event upon which the grantor has the power to terminate the grantee's interest when the event occurs. *Field v. Shaw,* 535 S.W.2d 3, 5 (Tex. Civ. App. – Amarillo 1976, no writ). Under a condition subsequent the grantee's estate will not be terminated for a breach of the condition until the grantor re-enters or takes an equivalent action to terminate the grantee's estate. *Saunders v. Alamo Soil Conservation Dist.,* 545 S.W.2d 249, 253 (Tex. Civ. App. – San Antonio 1977, writ ref'd n.r.e.). A possibility of reverter is "a future interest retained by a grantor after conveying a fee simple determinable, so that the grantee's estate terminates automatically and reverts to the grantor if the terminating event ever occurs." BLACK'S LAW DICTIONARY 1284 (9th ed. 2009).

5

*Bennett v. Tarrant County Water Control & Imp. Dist. No. One*, 894 S.W.2d 441, 446 (Tex. App. – Fort Worth 1995, writ denied). In ambiguous cases, the Texas Supreme Court has held that where language in a deed creates doubt as to whether the grantor intended a limitation or a condition subsequent, the language should be construed as a condition subsequent because a condition subsequent is less onerous than a limitation upon the grantee as the estate would not terminate automatically, but would continue until the grantor acts to terminate the estate. *Lawyers Trust Co. v. City of Houston*, 359 S.W.2d 887, 890 (Tex. 1962). Moreover, when there is doubt in the construction of a deed's language, the doubt is resolved against the grantor. *Field v. Shaw,* 535 S.W.2d 3, 6 (Tex. Civ. App. – Amarillo 1976, no writ).

We find that the language of the deeds' conditions is ambiguous. It is unclear whether the Singers intended to create a condition subsequent or a possibility of reverter as the deeds contain language that is generally used to create both.[2] First, the granting clause of the donation deeds includes the words "[g]rant, [g]ive and [c]onvey." The habendum clause uses the words "[to have and hold] the premises herein described and herein conveyed…unto the State of Texas and its assigns forever," which indicate an intent to convey a fee simple absolute. *See O'Connor v. Thetford¸* 174 S.W. 680 (Tex. Civ. App. – San Antonio, 1915, writ ref'd). Second, the language "[i]n the event the land…is not used for public highway purposes…on or before January 1, 2000," creates a condition that the State must satisfy. Third, the words "revert to and be revested"

---

[2] While no specific words are needed to create either a fee simple determinable or a fee on condition subsequent certain words generally indicate an intent to create one versus the other. *Bagby v. Bredthauer*, 627 S.W.2d 190, 196 n.4 (Tex. App. – Austin 1981, no writ). The words "while," "during," "until," or "so long as" usually establish an intent to create a fee simple determinable. *Id.* The terms "upon condition that," "provided that," "but if," "if it happen that" are words used to create a condition subsequent. *Id.* A grantor does not have to expressly use possibility of reverter language. *Crowell v. Texas A & M University System*, No. 05-94-01510-CV¸ 1995 WL 316833, at *5 (Tex. App. – Dallas May 25, 1995, writ denied) (not designated for publication). Similarly, while language of re-entry and forfeiture tend to create a condition subsequent, they are not imperative. *See Dilbeck v. Bill Gaynier, Inc.,* 368 S.W.2d 804, 808 (Tex. Civ. App. – Dallas 1963, writ ref'd n.r.e.).

express a reverter in the Singers. The Singers rely on *Cypress-Fairbanks Indep. School Dist. v. Glenn W. Loggins, Inc.*, 115 S.W.3d 67, 70 (Tex. App. – San Antonio 2003, pet. denied), to argue that reversion of the disputed property to them was automatic because the deeds created a possibility of reverter. However, the deed at issue in *Cypress-Fairbanks*, unlike the deeds in this case, specifically contained automatic reversion language. *Id*. at 69.

We think that the deeds, when viewed and construed in their entirety, create a fee simple subject to a condition subsequent. *See Gulf, C. & S. F. Ry. v. Dunman*, 74 Tex. 265, 11 S.W. 1094, 1095 (1889) (deed provision was construed as condition subsequent even though it contained "shall revert" language because a duty was imposed on grantee); *Jones v. McLain*, 41 S.W. 714, 714 (Tex. Civ. App. – Fort Worth 1897, no writ) (deed provision prohibiting sale of alcohol construed to be a condition subsequent notwithstanding terms "shall absolutely revert to"); *Houston & T. C. R. v. Ennis-Calvert Compress Co*., 56 S.W. 367, 368 (Tex. Civ. App. – Austin 1900, writ ref'd) (deed language: "ipso facto revert to and vest in," construed to be a condition subsequent); *Field,* 535 S.W.2d at 5-6 (deed provision construed as condition subsequent where language stated if property was not used for its designated purpose, title would revert to the grantor). Because we find the language of the deeds is unclear as to whether a condition subsequent or possibility of reverter was created, we must resolve that doubt in favor of a condition subsequent. *Lawyers Trust Co.*, 359 S.W.2d at 890.

We must next decide whether the Singers met their summary judgment burden by producing more than a mere scintilla of evidence that they owned the property at issue. *See Gray*, 225 S.W.3d at 616. The State argues that the Singers lost their ownership rights when they conveyed the fee title to the State and asserts that the Singers did not regain ownership because the

7

State never breached the condition subsequent. The State asserts that because it did satisfy the deeds' condition, because there was no automatic reversion of the donated land to the Singers, and because the Singers did not take affirmative action to regain title in the event of a breach of the condition subsequent, the Singers never regained ownership of the property they donated to the State.

The Singers contend that they produced evidence showing that the property that pertained to the construction contract that was let in 2003 and on which construction began in 2004, namely, the land that became the main lanes, reverted to them due to the State's failure to let a contract and begin construction by January 1, 2000 as required by the terms of the donation deeds. Thus, according to the Singers, there is more than a scintilla of evidence showing that they owned the property at issue. We disagree.

Because the trial court did not specify the grounds that it relied upon for its ruling, the summary judgment must be affirmed if any of the grounds advanced is meritorious. *See Carr*, 776 S.W.2d at 569. After reviewing the evidence, there is nothing in the record to support the Singers assertion that they owned the property at issue because there is no evidence showing that the State failed to use the property for public highway purposes by January 1, 2000, which by the express language of the deed conditions included construction contract letting. Here, the record shows that a construction contract was let in 1996 for Stage 1 of the SH 121 (Lewisville Bypass) project and that Stage 1 construction began in 1996. Although the Singers produced evidence showing that a construction contract for the main lanes was not let until 2003, and that construction on the main lanes did not begin until 2004, the evidence does not negate the fact that Stage 1 construction of the frontage roads included some construction of the supporting infrastructure for

8

the main lanes as well as some excavation and grading for the anticipated main lanes. There is no language in the donation deeds that mandate that the State must have finished constructing the main lanes or the entire SH 121 (Lewisville Bypass) project by January 1, 2000.

Similarly, the record does not reveal whether any portion of land was left wholly undisturbed during Stage 1 construction. Rather, the evidence clearly shows that as of 1996, preparations and construction began on the donated land for public highway purposes. The evidence showed that part of the Stage 1 construction was designed to exceed the work needed to be done on the frontage roads in order to accommodate the future main lanes which were to be built in Stage 2. Based upon the evidence, we decline to hold that the 1996 construction of the frontage roads, part of the main lane infrastructure, and the excavation, grading, and re-vegetation of the property at issue did not constitute use for public highway purposes. We further note that the deeds did not expressly require the highway to be in use as a highway by January 1, 2000. *See King v. City of Dallas*, 374 S.W.2d 707, 710 (Tex. Civ. App. – Dallas 1964, writ ref'd n.r.e.) (where a deed gifted property to the city of Dallas specifically for "public park purposes" and specifically as a "park," the court concluded that the widening of paved streets, a bridge, a retaining wall, and sidewalks constituted "public park purposes"). Therefore, we conclude that the State did not breach the condition subsequent found in the donation deeds, the property at issue did not revert to the Singers and the Singers failed to re-enter or take equivalent action to terminate the State's interest in the disputed property in the event of a breach of the condition subsequent, as such the Singers never regained ownership of the property. *See Saunders*, 545 S.W.2d at 253; *Field,* 535 S.W.2d at 5.

Because the Singers failed to present any evidence establishing ownership of the property

at issue, the trial court did not err in granting that State's no-evidence summary judgment on the Singers' inverse condemnation claim. *See Rust v. Texas Farmers Ins. Co.*, 341 S.W.3d 541, 550 (Tex. App. – El Paso 2011, pet. denied) (the trial court must grant the motion if the non-movant fails to produce summary judgment evidence that raises a genuine issue of material fact). Having found that the Singers did not own the property at issue, they are unable to establish a taking by the State and as such, we do not find it necessary to address the Singers remaining issues. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Issues One through Twelve are overruled.

## CONCLUSION

Having overruled all of the Singers' issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

December 28, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

10