Affirmed as Modified and Opinion filed June 18, 2009








Affirmed as Modified and Opinion filed June 18, 2009.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00830-CV

_______________

 

PAT POUNDS, ALVIN COMMUNITY COLLEGE DISTRICT, ALVIN
INDEPENDENT SCHOOL DISTRICT, THE CITY OF ALVIN, THE CITY OF MANVEL, AND
BRAZORIA COUNTY, Appellants

 

V.

 

MEGAN L. JURGENS AND JUDY PIPER LEAHY, Appellees

                                                                                                                                                

On Appeal from the 239th District Court

Brazoria County, Texas

Trial Court Cause No. 11621*RM00

                                                                                                                                                

 

O P I N I O N








This is
an appeal from a final summary judgment in which the trial court (1) declared
that a 1986B87 judgment of foreclosure and tax sale were void to the extent the
judgment and sale conveyed the mineral interest and royalty interest in an
approximately twenty-acre parcel of land (Athe subject land@); (2) declared that a 1998 Deed
Without Warranty, which conveyed the subject property to the appellant, Pat
Pounds, was void to the extent the deed conveyed the mineral interest and
royalty interest to Pounds; (3) rendered judgment against Pounds regarding the
mineral ownership and royalty interest of the subject property; and (4)
rendered judgment in favor of appellees, Megan L. Jurgens and Judy Piper Leahy
(Aappellees@), confirming their mineral ownership
and royalty interest in and to the subject property.

We
conclude the summary judgment proof established that (1) taxes were delinquent
on the surface estate only, and not on the royalty interest, (2) the tax sales
were authorized only on the surface estate and appellees= possibility of reverter, and (3) the
tax code did not preclude appellees from defending against the interpleader
action or claiming for modification of the foreclosure and sale of their royalty
interest.  Accordingly, we modify the judgment by deleting the portions of the
judgment decreeing the prior judgment and tax sales are void with regard to
appellees= Amineral interest@ (here, the possibility of reverter)
but retain those portions decreeing that the prior judgment and tax sales are
void with regard to the royalty interest.  We affirm the judgment as modified.

I. Factual and Procedural Background








Three
generations ago, Nellie Lewellen owned the subject land.[1] 
In 1929, Lewellen executed an oil and gas lease with R. Wagner, as lessee, and
covering the subject land, situated in Brazoria County.  Under the lease,
Lewellen Agrant[ed], demise[d], lease[d] and let@ to Wagner, Afor the sole and only purpose of
mining and operating for oil, gas and sulphur and laying pipe lines, and
building tanks, power stations and structures thereon to produce, save and take
care of said products@ on the subject property.[2] 
The parties agreed the lease would Aremain in effect for a term of five
years from October 12, 1929, and as long thereafter as oil, gas or sulphur, or
either of them, is produced by said land . . . or operations [were] reasonably
progressing.@  In consideration, Wagner agreed, inter alia, to deliver to the
Lewellens= credit one eighth of all Aoil produced and saved from the
leased premises,@ and to pay the Lewellens= Aone-eighth of the sum received for
the gas from each well where gas only is found . . . .@

Appellees
are Lewellen=s great grandchildren and heirs of Lewellen=s granddaughter, Jane Jones
Cunningham.  SETEX Oil Company, L.P. (ASETEX@) is the successor-in-interest to
Wagner.








From
1983 to 1986, various Brazoria County taxing units sought foreclosure of tax
liens on, and sale of, the subject land.[3] 
In its original petition, Alvin Independent School District listed the account
and abstract as AAccount 27135 ABST  402 LTS 14B15 SURFACE ONLY ACH&B.@  Alvin ISD=s amended petition and the City of
Alvin=s second amended petition show the
same account number, but do not contain the ASURFACE ONLY@ designation.[4] 
In all three petitions, the named defendants were Nellie (or Nellia) Lewellen
and L.E. Jones.[5]  Service was
by publication.  Nellie Lewellen had died in 1935.[6] 
Her daughter, Lillian E. Lewellen  Jones, had died in 1967.  In 1978, Lillian=s daughter, Jane Jones Cunningham had,
by recorded deed, conveyed a portion of the subject land to the State of Texas,
specifically excepting the mineral rights.[7]

The
taxing units recovered judgment against ANellie Lewellen and L. E. Jones,@ and the court ordered sale of the
subject land.  On April 29, 1987, the subject land was deeded to the City of
Alvin, in trust, for itself, the Alvin Independent School District, the Alvin
Community College District, and Brazoria County.  The deed was filed June 8,
1987.

In 1998,
in consideration for the sum of $14,790 and by means of a Deed Without
Warranty, the taxing units conveyed the subject land to Pounds.  By 2000, both
Pounds and appellees were claiming landowner=s royalties from SETEX.  Brazoria
County admits that, before deeding the subject property to Pounds, it sent Jurgens
a receipt for taxes paid on property with the legal description of ALEASE 007220 LEWELLYN [sic] NELLIE
#2, SOUTHEAST TEXAS OIL & GAS, RI  0.0468750, A0402 (A C H & B), 20.000
ACRES.@

In 2000,
SETEX deposited the landowner=s royalty in the court=s registry and initiated the present
lawsuit by filing a petition in interpleader naming Pounds and appellees as
defendants.  Pounds and appellees answered and filed claims against each
other.  Appellees also claimed against Brazoria County, requesting that it
execute a new deed which excepted the mineral royalties.  Appellees
subsequently amended their pleading to add a petition for bill of review in
which they asserted neither they nor Cunningham, their mother, had been served
in the delinquent tax suit that gave rise to the 1987 tax sale.








Pounds
and appellees filed numerous motions for summary judgment.  The taxing units
filed a response and letter in support of Pounds=s pleadings and motions.  The court
granted appellees= motion and denied Pounds=s.  The judgment provides in relevant
part:

IT IS
THEREFORE ORDERED that:

 

1. 
Judgment is rendered that the Tax Sale conducted by Brazoria County, for Alvin
Independent School District and the City of Manvel, and Alvin Community College
District, that took place on or about April 7, 1987 for the mineral interest
and the royalty interest to the property described herein below is VOID.

Property Description:  Lots, 14 and 15, 20 Acres, Abstract 402, Section 91, ACH&B, being
the same property more particularly described in Volume 257, page 814 and
Volume 215, page 118, [] Deed Records Brazoria County, Texas, to which
reference is made for a more complete description.

2. 
Judgment is rendered in favor of the Movants Megan Jurgens and Judy Piper
Leahy, confirming that the Judgment in the Tax Suit, Cause No. 83G1814, City of
Alvin v. Lewellen, Nellie, et al., In the District Court, 239th judicial
district, of Brazoria County, Texas as it relates to the mineral interest and the
royalty interest is VOID.

3. 
Judgment is rendered that the Deed Without Warranty for the sale of the
property described hereinabove, conveying the property to Pat Pounds in April
1998, Brazoria County Official Recording Number 98 B 016452, as to the mineral, interest and royalty
interest is VOID.

4. 
Judgment against, Defendant Pat Pounds as to the mineral ownership of lots 14
and 15 Abstract 402, Section 91, ACH&B RR Survey.

5. 
Judgment against, Defendant Pat Pounds as to the royalty interest of lots 14
and 15 Abstract 402, Section 91, ACH&B RR Survey.

6.  A
Judgment is rendered in favor of Megan Jurgens, and Judy Piper Leahy confirming
their mineral ownership and royalty interest in and to the described property
more fully described hereinabove.

7.  All
funds held in the registry of the court, together with all funds deposited in
the registry of the court in the future, are ORDERED held in the
registry of the court until further order of this court.








                        8.  Judgment is rendered in
favor of Defendants Megan Jurgens and Judy Piper Leahy, for the Costs of Suit;
and

9. 
Movants, Jurgens and Leahy, will be granted such other relief, special or
general, at law or in equity, as may be shown that Movants are justly entitled
to receive.

This
judgment is final and is appealable and finally disposes of all parties and all
claims.

Pounds
and the taxing units filed notices of appeal.  Appellees did not.

II.  Issues Presented and Standard of Review

In issue
one, Pounds argues the trial court erred in rendering judgment that the 1987
deed from the sheriff=s sale, which resulted from the 1986 tax foreclosure
judgment, did not convey the mineral estate and the royalty interest in the
subject property to the City of Alvin.  In issue two, she argues the same error
in the court=s judgment regarding the 1998 Deed Without Warranty from the City of
Alvin to her.  As part of issue two, Pounds sets forth several procedural bars
to appellees= assertion of their rights to the mineral and royality interests.  In
short, Pounds argues the trial court erred in granting appellees= motion for summary judgment and
denying Pounds=s motion for summary judgment.[8]








Under
well-established standards governing a traditional motion for summary judgment,
the movant must show there is no genuine issue of material fact and he is
entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  We review a summary
judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661
(Tex. 2005).  We take as true all evidence favorable to the nonmovant, and we
indulge every reasonable inference and resolve any doubts in the nonmovant=s favor.  Id.  When, as in
this case, both parties move for summary judgment on the same issues and the
trial court grants one motion and denies the other, we review the summary
judgment evidence presented by both parties, determine all questions presented,
and render the judgment the trial court should have rendered.  Id.

III.  Analysis

A.  Introduction








The
dispositive issue in this case is whether a tax foreclosure judgment and an
order of sale, which arise from delinquent tax accounts on the surface estate
of the described property, but not on the royalty interest resulting from an
effective mineral lease on the property, for which no taxes are owing, give the
sheriff authority to sell the royalty interest.  For the reasons below, we
conclude they do not.  Given our conclusion that the initial judgment of
foreclosure and sale did not extend to the royalty interest, we further
conclude there is no procedural bar to appellees= defending against the interpleader
petition and asserting their rights to the royalty interest.  As discussed
below, this conclusion is limited to the royalty interest and does not apply to
the possibility of reverter in the mineral estate.

B.  Scope of the 1986 Judgment of
Foreclosure and 1987 Tax Sale

It is
undisputed that (1) Lewellen executed an oil and gas lease to Wagner in 1929,
(2) the lease provided Lewellen was to receive a royalty from Wagner, (3) the
lease remained in effect until the date of the present lawsuit initiated by
Wagner=s successor in interest, SETEX, and
(4) appellees are Lewellen=s successors in interest.  It is also undisputed that (1) the
taxing units maintained a separate account for taxes on the Lewellen royalties,
(2) the separate account was not delinquent at the time of the judgment of
foreclosure and tax sale, and (3) Lewellen=s successors continued to pay taxes
on the royalty interest.

In
Texas, minerals in place are realty and, as such, are subject to ownership,
severance, and sale.  Hager v. Stakes, 116 Tex. 453, 471, 294 S.W. 835,
842 (1927).  A grant or reservation of mineral interests by the fee owner
effects a horizontal severance and creates two separate and distinct estates: 
an estate in the surface and an estate in the minerals.  Acker v. Guinn,
464 S.W.2d 348, 352 (Tex. 1971).  Moreover, as the supreme court explained in Natural
Gas Pipeline Co. of America v. Pool:








 In Texas it has long been recognized that an oil and gas lease is not
a Alease@ in the
traditional sense of a lease of the surface of real property.  In a typical oil
or gas lease, the lessor is a grantor and grants a fee simple determinable
interest to the lessee, who is actually a grantee.  Consequently, the
lessee/grantee acquires ownership of all the minerals in place that the
lessor/grantor owned and purported to lease, subject to the possibility of
reverter in the lessor/grantor.  The lessee=s/grantee=s interest is Adeterminable@ because it may terminate and revert entirely to the
lessor/grantor upon the occurrence of events that the lease specifies will
cause termination of the estate.

 

124 S.W.3d 188, 192 (Tex.
2003) (citations omitted).

Thus,
the mineral estate may be severed from the surface estate not only by a grant
of the minerals in a deed or reservation in a conveyance, but also by grant in
a lease.  Moser v. U.S. Steel Corp., 676 S.W.2d 99, 101 (Tex. 1984). 
When, as here, the lessor reserves only a royalty interest, the lessee acquires
title to all of the oil and gas in place, and the lessor owns only a
possibility of reverter and has the right to receive royalties.  Pool,
124 S.W.3d at 192.  As distinguished from a mineral interest, the royalty
interest is a non‑possessory interest.  Id.[9]








The
lessor=s right to receive royalties is
nevertheless considered an interest in real property and is taxable as such.  See
Sheffield v. Hogg, 124 Tex. 290, 298B99, 77 S.W.2d 1021, 1024 (1934).  The
royalty interest created by leases similar to the 1929 Lewellen lease to Wagner
in the present case was meant to benefit the owner of the estate in the land
and to run permanently with the land.  See id. at 300, 77 S.W.2d at
1025.  Thus, under Sheffield, although the effect of the lease in the
present case was to sever the mineral estate from the surface estate, the
royalty interest deriving from the lease of the mineral estate, initially
stayed with the land.[10]  The same
was true of the possibility of reverter.  See A.W. Walker, Jr., The
Nature of the Property Interests Created by an Oil and Gas Lease in Texas,
7 Tex. L. Rev. 1, 9 (1928)
(stating after execution of typical oil and gas lease Aowner of the surface estate@ has the possibility of reverter in
the oil and gas estate).








Appellees
or their predecessors, however, could have conveyed the land and retained their
royalty interest or conveyed their royalty interest and retained the land.  See
Sheffield, 124 Tex. at 308B09, 77 S.W.2d at 1029B30 (stating Texas courts have
established the rule that rents or royalties payable under oil and gas mineral
leases are severable and separable from ownership of surface estate and are
property rights, and, given this rule, they are assignable by the owner). 
Similarly, they could have sold or assigned the possibility of reverter and
retained the land, or they could have conveyed the land and retained the
possibility of reverter.  See Jupiter Oil Co. v. Snow, 819 S.W.2d 466,
468 (Tex. 1991); York v. Kenilworth Oil Co., 614 S.W.2d 468, 471 (Tex.
Civ. App.CWaco 1981, writ ref=d n.r.e.).  It is undisputed in the present case that neither
appellees nor their predecessors did so.  Accordingly, their fractional
interest in the royalty and the possibility of reverter were never severed from
the surface estate.  Cf. Birdwell v. Am. Bonding Co., 337 S.W.2d 120,
131 (Tex. Civ. App.CFort Worth 1960, writ ref=d n.r.e.) (stating, until any
particular fractional or percentage interest of mineral estate has been
initially vested (through grant or reservation) in one other than owner or
owners of surface estate, said interest in mineral estate is not to be treated as
having been Asevered@ from the surface estate, and thus, if grantor owns surface estate and
fractional interest in mineral interest underlying same which has never been
severed, as through grant or reservation, ownership is to an entire estate
unsevered).

To say
that appellees= royalty interest and possibility of reverter had not been severed from
the surface estate in 1986 does not, however, answer the question of whether
appellees= royalty interest and possibility of reverter were subject to foreclosure
and thus covered by the Sheriff=s Deed.  The tax lien, authorized by Texas Constitution
Article VIII, section 15 and the implementing statutes, extends only to the
particular realty against which such taxes have been assessed.  See Richey v
Moor, 112 Tex. 493, 497B98, 249 S.W. 172, 173B74 (1923). Thus, no parcel of real
property may be held liable for any taxes except those assessed against that
parcel.  State Mortgage Corp. v Ludwig, 35 S.W.2d 267, 268 (Tex. Civ.
App.CSan Antonio 1931), rev=d on other grounds, 121 Tex. 268, 48 S.W.2d 950
(1932).  Therefore, for appellees= mineral interests in the property to
be taken in a tax foreclosure of the surface, those interests must have been
taxed together with the surface and thus have been similarly delinquent and
subject to the foreclosed tax lien.  The taxing units admit, and the record
shows, those circumstances were not present in relation to appellees= royalty interest in this case.  Accordingly,
to comport with Texas Constitution Article VIII, section 15, the 1986B87 judgment and order of sale
necessarily had to except the royalty interest from foreclosure and sale.  The
royalty interest therefore was severed from the surface estate by virtue of the
1987 sale and did not pass to Pounds in the 1998 sale. 








In
contrast to the royalty interest, the possibility of reverter is a non-taxable
interest.  Texas Turnpike Co. v. Dallas County, 153 Tex. 474, 478, 271
S.W.2d 400, 402 (1954). As discussed above, the possibility of reverter in the
mineral estate was never severed from the surface estate.  Additionally, the
legislature has specified that a tax lien has priority over the possibility of
reverter.  See Tex. Tax Code Ann.
' 32.05(b)(3) (Vernon 2008).[11] 
Unlike the royalty interest in the present case, there are no circumstances,
such as a separate and non-delinquent account, that present an impediment to
foreclosure and sale of the possibility of reverter as an interest running with
the surface estate.  But see Cypress-Fairbanks Indep. Sch. Dist. v. Loggins,
115 S.W.3d 67, 72B73 (Tex. App.CSan Antonio 2003, pet. denied) (holding (1) entity which
owned possibility of reverter owned a nontaxable interest and could not be
proper defendant to tax foreclosure sale and (2) purchaser of property of
defaulting taxpayer would take title subject to interest of entity owning
possibility of reverter).[12]

For the
preceding reasons, we conclude 1986 judgment of foreclosure and order of sale
could not extend to appellees= royalty interest.  Accordingly, the 1987 deed to the City of
Alvin from the sheriff=s sale conveyed an interest in the surface estate only.  See
Alvin v. Zindle, No. 14-06-01147-CV, 2007 WL 3071999, at *2 (Tex. App.CHouston [14th Dist.] Oct. 23, 2007,
no pet.) (mem. op.) (AWhen the sheriff is ordered to sell certain property, the
order gives him no authority to seize and sell any other property.@).  To the extent it purported to
convey any other interest, it was void.  See id.  It therefore follows
that the 1998 Deed Without Warranty from the City of Alvin to Pounds for the
same property also granted and conveyed an interest in the surface estate only.[13] 
As explained above, however, the surface estate carried with it a possibility
of reverter in the mineral estate.

C.  Procedural Bars








As part
of her second issue, Pounds sets forth several procedural bars to appellees= asserting their right to the mineral
estate and royalty interest.  First, she argues appellees did not allege
sufficient facts to warrant a bill of review.  Next, she invokes Texas Tax Code
sections 34.08, 34.05 and 33.54, which set forth conditions precedent to
commencing a suit and limitations periods.  See Tex. Tax Code Ann. '' 33.54, 34.05(f), 34.08  (Vernon
2008) (regarding limitations on actions relating to property sold for taxes,
limitations on action attacking validity of resale of property by taxing unit,
and conditions necessary to commence a challenge to validity of a tax sale,
respectively).

Among
other responses, appellees argue the 1986 foreclosure and order of sale were
void because Cunningham, the owner of the surface and mineral estates at that
time, was not named as a party.  Appellees then argue that, because the 1986
foreclosure and the 1987 sale were void, the taxing units had nothing to convey
to Pounds in 1998.

Bill
of review.  Pounds
contends appellees= Abill of review action is invalid because there was no
allegation of fraud and because it was not filed within four years of the default
judgment.@   At oral argument, however, appellees informed this court they were not
raising the issues related to the bill of review and were not contesting the
adjudication regarding the land.[14] 
Accordingly, Pounds=s argument directed at appellees= petition for bill of review is moot.

Failure
to deposit funds into the registry.  Pounds next argues appellees did not have Astanding@ to challenge the 1987 tax sale and
the 1998 resale to Pounds because appellees did not deposit into the registry
of the court an amount equal to the delinquent taxes.  In support, she cites
Tax Code section 34.08(a), which provides:

A person may not commence an action that challenges the validity of a
tax sale under this chapter unless the person:








(1) deposits into the registry of the court an amount equal to the
amount of the delinquent taxes, penalties, and interest specified in the
judgment of foreclosure obtained against the property plus all costs of the tax
sale;  or

(2) files an affidavit of inability to pay under Rule 145, Texas Rules
of Civil Procedure.

 

Tex. Tax Code Ann. ' 34.08(a) (Vernon 2008).

Based on
the clear language of the statute, there are two impediments to applying it to
appellees= challenge to sale of their royalty interest in the present case.  First,
appellees did not commence the interpleader action that resulted invalidation
of the tax sale of the royalty interest; SETEX did.[15] 
Second, the taxing units admit there were no delinquent taxes on the royalty;
therefore appellees had no amount to deposit.

Limitations
periods.  Pounds
also invokes the following limitations provisions of the Tax Code: section
33.54(a), previously setting a three-year limitation period on actions against
a purchaser of property at a tax sale; 34.08(b), referring to the limitation
periods in section 33.54(a); and section 34.05(f), setting a one year
limitation period on an action attacking the validity of a resale of property
by taxing unit which is party to judgment of foreclosure.

In 1987,
the predecessor to section 33.54(a) provided for a three-year limitations
period and subsection (b) provided:








If a person other than the purchaser at the tax sale or his successor
in interest pays taxes on the property during the three years following the
date the deed is filed and that person was not served citation in the suit to
foreclose the tax lien, the three year limitations period does not apply to
that person.

 

Act of May 26, 1979, 66th
Leg. R.S., ch. 841, ' 1, sec. 33.54(b), 1979 Tex. Gen. Laws 2217, 2296 (amended
1997, current version at Tex. Tax Code ' 33.54 (b)).

The deed
from the sheriff=s sale resulting from the 1986 judgment of foreclosure was
filed June 8, 1987.  The record contains receipts showing Cunningham paid the
1987, 1988, and 1989 taxes on the royalty interest.  Cunningham died in 1990. 
The record contains her 1990 tax statement with a handwritten notation Apd/ 1/29/91.@  It further appears Cunningham=s estate and heirs continued to pay
the taxes on the royalty interest through the time appellees (Cunningham=s heirs) cross-claimed in the present
suit.  See Pickens Joint Venture v. Doh Oil Co., No. 08‑06‑00314‑CV,
281 S.W.3d 116, ___, 2008 WL 3166966, at *3 (Tex. App.CEl Paso Aug. 7, 2008, pet. denied)
(stating, under current statute, limitations could have been tolled to extent
entity proved it paid taxes on property during limitations period and until
date it filed action challenging the sale).  The taxing units admit no taxes
are due on the royalty interest.  Appellants do not contend Cunningham was
named or served in the foreclosure suit.  The section 33.54(b) limitations
period does not preclude appellees= challenge to foreclosure of the
royalty interest.

Pounds
also relies on Texas Tax Code section 34.05(f), which provides:  AAn action attacking the validity of a
resale of property pursuant to this section may not be instituted after the
expiration of one year after the date of the resale.@  Tex. Tax Code Ann. ' 34.05(f) (Vernon 2008).  As
discussed above, appellees were not precluded from challenging the 1986B1987 foreclosure and sale and, in our
opinion and that of the trial court, have successfully done so in relation to
the royalty interest.  Thus, in 1987, the City of Alvin and the other taxing units,
acquired only the surface estate.  The 1998 deed to Pounds conveyed the Aproperty . . . acquired by [the 1987]
tax foreclosure sale.@  That property, as discussed above, did not include
appellees= royalty interest.








The
limitations provisions in sections 34.08(a) & (b) and 34.05(f) do, however,
preclude appellees= challenge to the sale of the surface estate along with the
possibility of reverter.  Appellees= attempt to circumvent these
provisions by pointing to alleged defects of parties and in service is without
merit.  See Pickens, 281 S.W.3d at ___, 2008 WL 3166966, at *3, *5
(holding that, under Texas Tax Code section 34.08, regardless of who was named
and served with citation in original foreclosure suit, party challenging the
resultant tax sale and deed must comply with the statute of limitations).

IV.  Conclusion

For the foregoing reasons, we overrule
Pounds=s first and second issues to the extent Pounds
challenges the portions of the judgment declaring the 1986 judgment of
foreclosure and order of sale, the 1987 tax sale, and the 1998 sale to Pounds
void in relation to the royalty interest.  Because no event resulted in
severance of appellees= possibility of reverter from the surface estate, the
foreclosure and sales of the surface estate carried with them appellees= possibility of reverter.  We therefore modify the
trial court=s judgment to delete those portions declaring the 1986
judgment of foreclosure and order of sale, the 1987 tax sale, and the 1998 sale
to Pounds void in relation to appellees= Amineral interest@
(here, the possibility of reverter).  We affirm the judgment as modified.

 

 

 

/s/        Charles Seymore

Justice

 

 

Panel consists of Justices Yates,
Seymore, and Boyce.









[1]  The subject land is described as

 

Lots 14 and 15, 20 Acres, Abstract 402, Section 91, ACH&B, being
the same property more particularly described in Volume 257, Page 614, and
Volume 215, Page 118 Deed Records, Brazoria County, Texas, to which reference
made for a more complete description.





[2]  The 1929 lease is not part of the appellate record. 
The language is found in a 1932 ratification of the lease by Nellie and her
husband, Arthur Lewellen.





[3] The following taxing units were cross-defendants
below and filed a notice of appeal:  Alvin Community College District, Alvin
Independent School District, the City of Alvin, the City of Manvel, and
Brazoria County.  We refer to them jointly as the Ataxing units.@





[4]  In its responses to requests for admissions,
Brazoria County admitted the county had a separate tax account for the surface
estate in the land by at least 1993.  It also admitted the Amineral account@
for the subject property for 1991 was in Jane J. Cunningham=s name and was transferred to Jurgens=s and Leahy=s
names after the 1991 statement.  Finally, Brazoria County admitted taxes on the
Amineral account@
were not delinquent from 1993 through 1999.  It is clear from the context and
the ARI@ designation on
the account statements, that Brazoria County was using Amineral interest@ to
refer to the royalty interest.





[5]  Appellees submitted the file of Attorney Jerry
Shiever, who represented the taxing units.  That filed contained an unsigned
affidavit for citation by publication and a signed certificate of last known
mailing address.  Both list Lewellen and Jones as defendants.  In the former,
Shiever represents that no defendants live outside Texas; in the latter, that
Lewellen and Jones=s address is in Hannibal Missouri.





[6]  Oddly, however, the record contains a copy of a
recorded deed executed on April 30, 1936, in which Nellie Lewellen purported to
deed a right of way to a portion of the subject land to Brazoria County for
purposes of constructing a road.  The deed contains the recitation, AIt is understood that all mineral rights are reserved
by the Grantor.@  Although Nellie Lewellen is named as the Grantor,
Lillian E. Jones and Arthur L. Lewellen appear to have executed the deed.





[7]  In that deed, Cunningham had reserved Aall of the oil, gas and sulphur in and under the land
herein conveyed . . . [but] nothing in this reservation shall affect the title
and rights of the State to take and use all other minerals and materials
thereon, therein and thereunder.@ 
In the accompanying affidavit of heirship, Cunningham stated, AI am authorized to grant and sell all fee simple right
[sic], title, or interest except minerals to any or all of said property.@





[8]  The taxing units observe, AAlthough named in the Judgment, Taxing Units are not
real parties in interest, but have participated in the litigation and have
filed briefs in support of the arguments raised by Appellant Pat Pounds.@  The taxing units set forth the following three
issues:

 

A.  THE TRIAL COURT ERRED BY GRANTING PLAINTIFF=S MOTION FOR SUMMARY JUDGMENT FOR THE FOLLOWING
REASONS:

 

1.  The trial court erred by ordering that the tax
sale of the subject property in this case that took place on or about April 7,
1987 and conducted by Taxing Units was void as to the mineral interest and the
royalty interest.

 

2.  The trial court erred by ordering that the
Judgment foreclosing the lien against the subject property in the tax suit
referred to in the Order granting Appellees=
Motion for Summary Judgment was void.

 

3.  The trial court erred by ordering that the deed
without warranty for the sale of the subject property, conveying the property
to Appellant Pat Pounds in April, 1998, was, as to the mineral interest and
royalty interest, void.

 

B.  THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT
AGAINST PAT POUNDS AND IN FAVOR OF APPELLEES REGARDING MINERAL AND ROYALTY
INTEREST OWNERSHIP OF THE PROPERTY IN DISPUTE.

 

C.  THE TRIAL COURT ERRED BY FAILING TO GRANT PAT
POUNDS= MOTION FOR SUMMARY JUDGMENT BECAUSE THE RECORD OF
THIS CASE ESTABLISHES AS A MATTER OF LAW THAT:

 

1.  The mineral estate underlying the foreclosed
surface acreage has not been severed from the surface;

 

2.  The mineral estate underlying the surface acreage
was therefore subject to the order of foreclosure and subsequent sale to Pat
Pounds pursuant to the delinquent tax suit collection process; and

 

3.  The royalty interest and reversionary interest in
the mineral estate underlying the foreclosed surface acreage are owned by Pat
Pounds.

 

 





[9]  AA mineral
estate consists of five interests:  1) the right to develop, 2) the right to
lease, 3) the right to receive bonus payments, 4) the right to receive delay
rentals, and 5) the right to receive royalty payments.@  French v. Chevron U.S.A. Inc., 896 S.W.2d
795, 797 (Tex. 1995).   A party conveying a mineral estate need not dispose of
all interests, but may hold back or reserve individual interests.  Id.  AHowever, >[w]hen
an undivided mineral interest is conveyed, reserved, or excepted, it is
presumed that all attributes remain with the mineral interest unless a contrary
intent is expressed.=@ Id. (citation omitted).

 

In Concord Oil Co. v. Pennzoil Exploration and
Production Co., the supreme court explained:

 

Under a typical lease providing for a 1/8 royalty, the
lessor may think that the interest retained is 1/8 of the minerals including
1/8 of the royalties.  This misconception is evidenced in a few decisions.  See,
e.g., [Tipps v. Bodine, 101 S.W.2d 1076, 1078 (Tex.  Civ. App.CTexarkana 1937, writ ref=d)] (lessor of mineral interest Aretained
one‑eighth of all the minerals in place, subject to the lease@); [Jupiter Oil Co. v. Snow, 819 S.W.2d 466,
468B69 (Tex. 1991)] (citing and following Tipps on
this point).  In actuality, a lease conveys a fee simple determinable with the
possibility of reverter.  When the lessor owns all the mineral estate (8/8) and
executes an oil and gas lease, the lessor has conveyed all the mineral estate
(8/8) but has retained a possibility of reverter in the entire mineral estate
(8/8).  See generally [Luckel v. White, 819 S.W.2d 459, 464 (Tex.
1991)].  The lessor also receives, of course, all rights that are bargained for
in connection with the lease, which usually include the payment of royalties,
delay rentals, and bonuses.

 

966 S.W.2d 451, 460 (Tex. 1998).





[10]  This statement is consistent with this court=s analysis in Sutton v. Green, a divorce case
in which the court rejected the husband=s
argument that Aseverance of some rights from the surface estate via
an oil and gas lease necessarily severs the entire mineral estate.@  No. 14-01-01043-CV, 2002 WL 1489347, at *3  (Tex.
App.CHouston [14th Dist.] July 11, 2002, no pet.) (not
designated for publication).





[11]    Although the legislature enacted this provision
after the lien arose in the present case, the provision applies regardless of
when the lien arose and applies to any cause of action pending on September 1,
2005 or brought after that date.  See Act of May 29, 2005, 79th Leg.,
R.S., ch. 1126, '' 12, 29(f), 30, 2005 Tex. Gen. Laws 3717, 3719, 3730B31.





[12]  Loggins was decided before the legislature
amended Texas Tax Code section ' 32.05(b)(3).  See
supra note 11.





[13]  Appellees contend that a deed without warranty is a
quitclaim deed and then invoke rules applicable to quitclaim deeds.  A deed
without warranty, however, is different from a quitclaim deed and offers the
buyer slightly more protection.  See Understanding a Real Estate Transaction,
67 Tex. Bar. J. 1017 (Dec. 2004).





[14]  Appellees did not file a notice of appeal and
therefore cannot seek greater relief than that afforded in the judgment.  See
Tex. R. App. P. 25.1(c) (AThe appellate court may not grant a party who does not
file a notice of appeal more favorable relief than did the trial court except
for just cause.@).





[15]  In their original cross-claim against Brazoria
County,  appellees prayed that the court require the County to execute a new
deed to Pounds Aexcepting the mineral royalties.@  In their original cross-claim against Pounds, which
was part of the same document, appellees prayed for execution of Aa correction Tax Deed Without Warranty that states >surface and surface only.=@  In their AFirst
Amended Cross-Claim and Original Petition for Bill of Review,@ appellees  included a single prayer for relief
requesting (1) vacation of the 1986 judgment, (2) a take nothing judgment
against ACross‑Defendants,@ (3) costs against ACross‑Defendants,@ (4) setting aside the sale to Pounds, and (5) all
other relief in law and equity to which they were entitled.  Appellees
subsequently filed an AAmended Petition for Bill of Review,@ in which they requested the identical relief they had
requested in their AFirst Amended Cross-Claim and Original Petition for
Bill of Review.@